**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 17 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBERT ALAN DANIEL; HANNA SUE DANIEL; ROBERT ALAN DANIEL, as guardian on behalf of minors J.R.D. and L.J.D., <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant - Appellee. | No. 24-6821 <br><br> D.C. No. 3:22-cv-05303-TMC <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
Tiffany M. Cartwright, District Judge, Presiding

Argued and Submitted November 18, 2025
Seattle, Washington

Before: McKEOWN, PAEZ, and DESAI, Circuit Judges.

Robert Alan Daniel was working in the Gifford Pinchot National Forest

("Gifford Forest") when his excavator slid sideways off an icy road and tumbled

down a hill. With his children, Daniel brought suit under the Federal Tort Claims

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Act ("FTCA"), alleging negligence in the design, construction, maintenance, and repair of the road—Forest Road 47 of the Gifford Forest at milepost 14.4. The district court organized its analysis around five allegations of agency wrongdoing in Daniel's complaint: 1) designing the road with excessive superelevation at milepost 14.4; 2) omitting asphalt grinding and the repair of the eroded shoulder at milepost 14.4 from the Gifford Forest's annual maintenance plans; 3) omitting asphalt grinding and shoulder repair at milepost 14.4 from the timber sale contract; 4) determining that Forest Road 47 was "safe for haul"; and 5) neglecting to repair the eroded shoulder at milepost 14.4 after it was brought to the United States Forest Service's ("Forest Service") attention.

The district court dismissed the first three claims as protected by the FTCA's discretionary function exception, dismissed the "safe haul" claim for lack of a private party analogue, and granted summary judgment for the government on the last failure-to-repair claim. Daniel timely appealed.

We review de novo the district court's dismissal for lack of subject matter jurisdiction under the discretionary function exception, *Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014), as well as the district court's grant of summary judgment, *Bolt v. United States*, 509 F.3d 1028, 1031 (9th Cir. 2007), and the district court's interpretations of state law, *Daly v. United States*, 946 F.2d 1467, 1469 (9th Cir. 1991). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we

24-6821

affirm the dismissals under the discretionary function exception, affirm the dismissal of the safe haul claim, reverse the grant of summary judgment on the failure-to-repair claim, and remand.

**1.** Road design, annual maintenance planning, and timber sale design are protected by the FTCA's discretionary function exception. *See* 28 U.S.C. § 2680(a). Daniel argues that the government has not met its burden to invoke the exception as to the nine-degree superelevation at milepost 14.4 because it cannot identify who built the road or when. Given the allegations in Daniel's complaint, we reject this argument.

In applying the discretionary function analysis, "we must first identify Plaintiffs' 'specific allegations of agency wrongdoing[,]' . . . look[ing] to the allegations of Plaintiffs' complaint." *Young*, 769 F.3d at 1053 (citations omitted) (quoting *Berkovitz v. United States*, 486 U.S. 531, 540 (1988)). Daniel's complaint alleges that "[t]he nine degree slope of FS 47 at milepost 14.4 was caused by the failure of the Defendant to exercise ordinary care in the design and /or construction of FS 47." Because this allegation assumes that the Forest Service designed and built the road, the district court did not err in concluding that the discretionary function exception applied to this claim.

The Forest Service's decisions to exclude the eroded shoulder from annual maintenance planning and from the list of required repairs in the timber sale are

24-6821

also covered by the exception.  The Forest Service lacks funding to maintain all the roads in the Gifford Forest, and, therefore, it must balance competing policy concerns, such as safety, cost, revenue, environmental impact, and traffic, when prioritizing maintenance and designing timber sales.  *See Childers v. United States*, 40 F.3d 973, 976 (9th Cir. 1994), *as amended* (Jan. 17, 1995) (applying the discretionary function exception to the Park Service's trail maintenance decisions).

**2.** We affirm the dismissal of Daniel's claim as to the Forest Service's safe haul determination.  Before a logging contractor can use a Forest Service road, the Forest Service must determine that the road is "safe for haul" by applying technical road safety standards.  The district court dismissed Daniel's claim as to the safe haul determination for lack of subject matter jurisdiction, holding that the determination had no analogue in private conduct.  *See United States v. Olson*, 546 U.S. 43, 45–48 (2005) (explaining what constitutes "like circumstances" for a private party analogue (quoting 28 U.S.C. § 2674)).

Daniel argues that the relevant private party analogue for the safe haul determination is the duty of a private landowner to a business invitee.  To define a landowner's duties to a business invitee, Washington has adopted the Restatement (Second) of Torts, sections 343 and 343A.  *Iwai v. Washington*, 915 P.2d 1089, 1093 (Wash. 1996).  Daniel's proposed analogue fails because the safe haul determination is not a "condition on the land," Restatement (Second) of Torts

4

§ 343 (1965); rather, it is the result of a unique government determination process.

**3.** We reverse the district court's grant of summary judgment for the government on Daniel's failure-to-repair claim.

**3.a.** There remains a genuine issue of material fact as to whether the timber sale contract delegated to Daniel's employer, Arsiero Logging ("Arsiero"), the Forest Service's duty to make the land safe for entry. Under Washington law, a delegation of a landowner's duties toward invitees is valid if, inter alia, it "is explicit in nature and the scope requires the independent contractor to assume the duty of exercising reasonable care to make the land safe for entry, meaning the delegation anticipates the harm of known or obvious dangers." *Eylander v. Prologis Targeted U.S. Logistics Fund*, 539 P.3d 376, 384 (Wash. 2023).

The district court focused on Daniel's failure to show that the Forest Service "retained control" over Arsiero's operations. But "[t]he retained control doctrine is a different theory of liability from the common law premises liability approach." *Id.* at 382. Demonstrating retained control is sufficient to defeat a claimed delegation of premises liability, but it is not necessary. *Id.* On remand, the trier of fact should consider whether the delegation to Arsiero was sufficiently "explicit" and broad in "scope" separate from any analysis of the "retained control" question. *Id.* at 384.

24-6821

The government acknowledged at oral argument that the timber sale contract did not delegate the duty to repair the road; instead, it argued that Arsiero was responsible for ensuring safety in operations.[1]  Similarly, the district court relied on provision B6.33 of the timber sale contract, which made Arsiero responsible for "compliance with safety requirements for Purchaser's employees."

This generalized delegation does not entitle the government to summary judgment.  A valid delegation must "anticipate[] the harm of known or obvious dangers."  *Eylander*, 539 P.3d at 384.  In *Eylander*, for instance, the delegation expressly required the contractor to develop a roofer safety plan which in turn identified the fatal hazard of the skylight.  *Id.* at 379, 384–85.  No similarly "explicit" delegation was made here.  *Id.* at 384.  Viewing the contract and deposition testimony in the light most favorable to Daniel,[2] the government has not established that Arsiero was responsible for dangers arising from the Forest Service roads' disrepair, including the eroded shoulder at milepost 14.4.

**3.b.** There are also genuine issues of material fact as to whether the Forest Service should have foreseen that Daniel would choose to encounter the risk of the

---

[1]    Oral Argument, *Daniel, et al. v. United States*, No. 24-6821, at 20:59–21:33, https://www.ca9.uscourts.gov/media/video/?20251118/24-6821/.

[2]    For example, the Forest Service's designated representative testified that the Forest Service retained ultimate authority to decide whether to repair roads.  And Arsiero's owner testified that he did not repair the shoulder because the decision to repair was "not [his] call," the Forest Service did not agree to pay for it, and he deferred to the Forest Service's expertise.

eroded shoulder despite its known or obvious nature.[3]  In Washington, a landowner is liable for harm brought about by a dangerous condition on the land, notwithstanding the known or obvious danger of the condition, when "the possessor should anticipate the harm despite such knowledge or obviousness." *Iwai*, 915 P.2d at 1093 (quoting Restatement (Second) of Torts § 343A (1965)). This includes when "the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk," such as when "the only alternative to taking the risk [is] to forgo [] employment." Restatement (Second) of Torts §§ 343A cmt. f, illus. 5.  Although Daniel testified to his awareness of the risk, he also testified that he "believe[d] that [his] job required [him]" to encounter it.

Daniel also argues that he did not know the total risk of danger at milepost 14.4, and that the danger was not obvious, because the nine-percent superelevation

---

[3]  Although Daniel failed to dispute this point at summary judgment, the genuine issues of material fact are apparent on the face of the evidence cited by the government.  It is true that the district court need only consider facts presented to it by the parties. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  But where the moving party cites evidence that, on its face, presents genuine issues of material fact, the district court is not asked to "perform a search, unassisted by counsel, through the entire record, to look for such evidence." *Id.* at 1030.  Here, the district court did not need to look beyond the government's citations to find that the government had not met its burden under Federal Rule of Civil Procedure 56(a).

added to the danger of sliding off the eroded shoulder.  This argument was not raised in the district court, but it is intertwined with the broader question of possessory liability on which we reverse and remand.  Thus, these interrelated factual questions—whether the danger of the eroded shoulder was obvious; whether the superelevation made the danger of the eroded shoulder less obvious; and whether the Forest Service should have expected that Daniel would encounter the risk of the shoulder anyway—should all be decided by a trier of fact.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

The parties shall bear their own costs for this appeal.